UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGINIA T. MCPHERSON,<br><br>       Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA CORPORATION<br>and KIM BENSON,<br><br>       Defendants. | Civil Action No. 09-CV-9946<br>(Holwell, J.) (Katz, M.J.)<br><br>ECF CASE<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

    COMES NOW THE PLAINTIFF, Virginia T. McPherson, by her attorney, Steven M. Warshawsky, for her Complaint against the defendants, Bank of America Corporation and Kim Benson, and alleging as follows:

**NATURE OF THE CASE**

    1. This is an action for employment discrimination and retaliation, on grounds of race and protected activity. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; and the New York City Human Rights Law ("NYCHRL"), as amended, N.Y.C. Admin. Code § 8-101 et seq.

**PLAINTIFF**

    2. Plaintiff Virginia T. McPherson is a citizen of New York and resides at 102-30 66th Road, Apt. 9H, Forest Hills, New York. Ms. McPherson is a 57-year-old white female. At all relevant times, Ms. McPherson was employed by Bank of America. On or about March 10, 2009, Ms. McPherson was unlawfully terminated from her position with U.S. Trust, Bank of America Private Wealth Management. At the time of her termination, Ms. McPherson's

title was Vice President, Personal Custody Division.  In this position, Ms. McPherson served as the client relationship officer for several hundred accounts with assets in excess of $1 billion.  Her office was located at 114 West 57th Street, New York, New York, 10036.

3.      Ms. McPherson had worked for U.S. Trust in New York in various positions of increasing responsibility since 1979 (except for 1986-1987, when she worked for E.F. Hutton in London).  U.S. Trust was acquired by Bank of America in or about July 2007.  Throughout her career, Ms. McPherson received excellent performance evaluations, including with Bank of America.  Her former manager in the Personal Custody Division has described her as "the consummate professional," with a "broad knowledge of the securities industry," who "builds excellent relationships with clients," and who is "one of the most diligent, hardworking individuals [he] [has] known in 24 years in the financial services industry."  Prior to her termination, Bank of America management gave no indication that Ms. McPherson's performance was deficient in any way.

## DEFENDANTS

4.      Defendant Bank of America Corporation is one of the largest financial services corporations in the world, with extensive operations throughout the United States, including New York, and in more than 30 foreign countries.  Bank of America is incorporated in Delaware and has its principal place of business in North Carolina.  Upon information and belief, Bank of America's registered agent in New York is CT Corporation System, 111 Eighth Avenue, New York, New York, 10011.

5.      Defendant Kim Benson is an employee and agent of Bank of America.  Upon information and belief, Ms. Benson is a citizen and resident of Oregon.  At all relevant times, Ms. Benson served as Managing Director of U.S. Trust, Bank of America Private Wealth

Management.  She was Ms. McPherson's second-level supervisor.  In this capacity, Ms. Benson regularly transacted business in New York, including supervising the employees of the Personal Custody Division (both remotely and in person) and engaging in the unlawful employment actions alleged in this Complaint.  Upon information and belief, Ms. Benson's actual place of business when in New York is 114 West 57th Street, New York, New York, 10036.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (insofar as one or more of Plaintiff's claims arises under federal law) and § 1332 (insofar as there is complete diversity among the parties and the amount in controversy exceeds $75,000).

7. This Court has personal jurisdiction over the defendants pursuant to the New York State Long-Arm Statute, CPLR § 302, and the United States Constitution.

8. This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

9. Plaintiff properly exhausted her administrative remedies under Title VII. She filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on August 18, 2009.  She received a Notice of Right to Sue on or about October 28, 2009.

10. There are no administrative exhaustion requirements for bringing the present claims under the NYCHRL.  Pursuant to N.Y.C. Admin. Code § 8-502(c), Plaintiff will mail a copy of this Complaint to the New York City Commission on Human Rights, Law Enforcement Bureau, 40 Rector Street, 9th Floor, New York, New York, 10006.

## FACTUAL ALLEGATIONS

11. On or about February 4, 2009, the annual bonus figures for the employees of the Personal Custody Division were delivered to Ms. McPherson's workplace and communicated to individual employees by the supervisory staff.

12. On or about February 5, 2009, Ms. McPherson met with her supervisee, Mike Tabinsky (who is a white male in his late 30s), and informed him that he was not receiving a bonus this year. Mr. Tabinsky was very upset by this news. Importantly, Ms. McPherson was not involved in the decision not to award a bonus to Mr. Tabinsky. On Mr. Tabinsky's last performance evaluation, Ms. McPherson rated him "meets expectations" in every category.

13. Later that morning, Mr. Tabinsky came to Ms. McPherson's office and told her that he was the only employee in the department who did not receive a bonus (apparently, he had asked other members of the group about their bonuses) and that he wanted an explanation. Ms. McPherson was unable to give him an explanation, as she was not privy to the decision-making process. Mr. Tabinsky followed up this conversation with an email to Ms. McPherson, dated February 5, 2009. In the email, Mr. Tabinsky stated that he was "incredibly insulted" to be the only person not to receive a bonus, that he wanted to know why he had been "singled out," and that he wanted Ms. McPherson to call Human Resources "to get to the bottom of this."

14. Shortly thereafter, Ms. McPherson called her manager, Kim Benson (who is a white female in her mid-50s), to convey Mr. Tabinsky's concerns about the bonus. Ms. McPherson also forwarded a copy of Mr. Tabinsky's email to Ms. Benson. Ms. Benson told Ms. McPherson that she had downgraded the "behaviors" section of Mr. Tabinsky's last performance evaluation from "meets expectations" to "does not meet expectations," based on an

earlier incident with Mr. Tabinsky (in October 2008) involving a dispute over his use of sick days for vacation. During this telephone call, Ms. Benson expressed annoyance that employees were discussing their bonuses with each other.

15. Ms. McPherson conveyed Ms. Benson's information to Mr. Tabinsky, who loudly remarked in front of the entire group that he had consulted an attorney about the situation and that he intended to make a complaint to Human Resources. Upon information and belief, Mr. Tabinsky is homosexual and complained to Human Resources about being discriminated against on the basis of sexual orientation. Upon information and belief, Mr. Tabinsky was worried about losing his job and believed that he could use the threat of a discrimination lawsuit to obtain a settlement from Bank of America. Indeed, sometime later, while talking to Ms. McPherson in her office, Mr. Tabinsky remarked: "I understand it takes two years to get a job now. Maybe I can get that [i.e., two years of salary]."

16. Over the next few days, the working environment in the Personal Custody Division was severely disrupted by accusations and finger-pointing over who was responsible for informing Mr. Tabinsky that he was the only person who did not receive a bonus. In particular, two of Ms. McPherson's colleagues – team leader Denise Lopez (who is an hispanic female in her early 60s) and team member Grace Sankar (who is a black female in her late 50s) – said that Ms. McPherson has "a big mouth" and blamed her for the controversy surrounding Mr. Tabinsky's situation. Ms. Lopez was Ms. McPherson's supervisor.

17. On Monday, February 9, 2009, Ms. McPherson sent an email to Susan Hannon (ethnicity and age unknown) in Human Resources complaining about being subjected to a hostile work environment by her supervisor and co-employee in the Personal Custody Division. Ms. Hannon almost immediately telephoned Ms. McPherson, briefly discussed the situation with

her, and told her that someone from the Legal Department would call her to discuss the situation further.

18. On or about February 10, 2009, a representative from the Legal Department, Mary Elizabeth ("Missy") George (ethnicity and age unknown), called Ms. McPherson to discuss the situation. Ms. George told Ms. McPherson that there was going to be "a big investigation" and that no decisions would be made until she had spoken to all of the persons involved. Ms. George and Ms. McPherson spoke on two or three subsequent occasions, when Ms. George needed additional information or clarification.

19. Upon information and belief, an investigation was conducted by Bank of America legal and human resources personnel into Mr. Tabinsky's EEO complaint (and possibly into Ms. McPherson's complaint of a hostile work environment), which involved interviewing the employees in the Personal Custody Division. The investigation took place in February and March 2009. At one point during the investigation, Mr. Tabinsky remarked to Ms. McPherson that he wanted "to bury" Ms. Lopez and Ms. Benson. He never told Ms. McPherson that he had made any complaints about her.

20. On or about Friday, March 6, 2009, Ms. McPherson was called into Ms. Benson's office for a conference call with Ms. George. During the call, Ms. George asked Ms. McPherson if she had ever heard Ms. Lopez (the team leader) call Mr. Tabinsky "lazy." Ms. McPherson answered, yes. It was well known in the group that Ms. Lopez called Mr. Tabinsky "lazy" and made derogatory remarks about other employees.

21. Ms. George then asked Ms. McPherson about some sexually explicit joke emails that Ms. McPherson had forwarded to Mr. Tabinsky on or about February 13. Upon information and belief, to bolster his EEO complaint against the company, Mr. Tabinsky

forwarded these joke emails to Human Resources and falsely claimed that he was offended by them. There was nothing anti-gay about these emails, however, which Mr. Tabinsky willingly viewed on Ms. McPherson's computer and personally requested be forwarded to his work email.

22. Ms. McPherson admitted sending the emails to Mr. Tabinsky. She explained to Ms. George and Ms. Benson that they were joke emails that she had received from a friend in England, that Mr. Tabinsky had seen them on the computer in her office, and that he had asked her to "shoot" them over to him. Ms. McPherson told Ms. George that this was a common practice in the office, and many employees viewed and distributed joke emails at work. Ms. George then interrogated Ms. McPherson in a threatening manner about Bank of America's email policy and code of ethics. After the conference call ended, Ms. Benson told Ms. McPherson that "they want you separated" for this supposedly "egregious" offense. Despite Ms. McPherson's unblemished record, Ms. Benson refused to consider imposing any progressive discipline. Clearly, Ms. McPherson was being set up as the scapegoat for Mr. Tabinsky's EEO complaint.

23. On Monday, March 9, 2009, Ms. Benson came to Ms. McPherson's office and asked her to provide the names of any employees who had sent joke emails at work or who had "bad mouthed" Bank of America. Ms. McPherson asked Ms. Benson if she was on a "witch hunt" and expressed skepticism that Mr. Tabinsky truly was offended by the emails. Ms. Benson only shrugged her shoulders and told Ms. McPherson to "think about it."

24. On Tuesday, March 10, 2009, Ms. Benson once again came to Ms. McPherson's office and asked her for the names of employees who had sent joke emails at work or who had "bad mouthed" Bank of America. Ms. McPherson told her that she (Ms. McPherson) and a former division manager had shared "racy" emails at work and that she had heard everyone

in the group, including Ms. Benson herself, make derogatory remarks about Bank of America. This answer infuriated Ms. Benson, who immediately told Ms. McPherson that she was "separated" from the company, then ordered her to hand over her company ID and credit card and to "pack up [her] things" and leave the building.  No exit interview was conducted; no written notification of Ms. McPherson's termination was provided (in direct violation of New York State labor law); and no benefits information was provided (in direct violation of New York State labor law).

        25.    Ms. McPherson arrived home that day at approximately 2:30 p.m., when she called Ms. Hannon in Human Resources.  Ms. Hannon told Ms. McPherson that she did not have time to speak with her, and asked her for a telephone number where she could be reached after 5:30 p.m.  Ms. Hannon never called her back.

        26.    Upon information and belief, at or around the time of Ms. McPherson's termination, Bank of America legal and human resources personnel conducted a search of the email accounts of every employee in the Personal Custody Division.  Upon information and belief, joke emails of a sexually explicit or otherwise inappropriate nature were found in all or most employees' accounts, and every employee was warned about violating Bank of America's email policy and code of ethics. No other employee besides Ms. McPherson, however, was terminated for such conduct.

        27.    On or about March 16, 2009, Ms. McPherson sent a letter to Ms. Hannon concerning the circumstances of her termination.  In the letter, Ms. McPherson noted that she "did not receive any letter of information concerning my benefits, insurance or recourse"; requested "written confirmation of my status"; and expressly stated that "it is my belief that others in the organization who are not similarly situated, as a white female over the age of 40,

may have been treated differently and more favorably." Ms. McPherson closed by stating that she is "prepared to return to work . . . or discuss an exit strategy at your earliest convenience." Ms. Hannon never responded to the letter.

28. On April 2, 2009, at 3:16 p.m., Ms. McPherson sent a follow-up email to Ms. Hannon's supervisor, Karen Rearden (ethnicity and age unknown), on which she cc'd Ms. Hannon. In her email, Ms. McPherson asked for a response to her March 16 letter. She also requested that Bank of America respond to the New York State Department of Labor in connection with her application for unemployment benefits, which was on hold pending receipt of the company's submission.

29. On April 3, 2009, Ms. McPherson briefly discussed her situation by telephone with Ms. Hannon. During this conversation, Ms. Hannon told Ms. McPherson that "it is in the hands of Kim Benson." Later that day, Ms. Hannon sent an email to Ms. McPherson advising her that the matter had been referred to the company's legal department.

30. Adding insult to injury, Bank of America contested Ms. McPherson's application for unemployment benefits, telling the DOL that she had been discharged for "misconduct" allegedly "for sending an inappropriate e-mail of a sexual nature to a co-worker." As a result, the DOL denied the application on April 9, 2009. As further evidence of Bank of America's hostility towards Ms. McPherson, the company did not provide Ms. McPherson with written notice concerning how to apply for unemployment benefits (as required by New York State labor law) until April 14, 2009, <u>after</u> they had contested her application for benefits.

31. On April 16, 2009, Bank of America sent a letter to Ms. McPherson claiming that it had "overpaid" her in the amount of $660.47 and demanding reimbursement for

that amount. To date, the company has failed to explain the basis of this alleged overpayment. This demand letter is a blatant act of harassment and retaliation against Ms. McPherson.

32. By letter dated May 1, 2009, Ms. McPherson's attorney communicated Ms. McPherson's concerns about her termination to Bank of America and requested certain information and documentation about the circumstances of her termination as the first step to resolving the situation without legal action. Although the company produced copies of Ms. McPherson's personnel file and its email policy and code of ethics, it did not produce any information or documentation about Mr. Tabinsky's complaint against Ms. McPherson (including copies of the joke emails), about the company's investigation in response to Mr. Tabinsky's complaint (including the results of the department-wide email search), or about the decision to terminate Ms. McPherson's employment. Clearly, Bank of America is hiding evidence of the defendants' unlawful conduct. Instead, by letter dated July 10, 2009, the company asserted that Ms. McPherson "was properly terminated for sending highly inappropriate, offensive and sexually oriented emails to associates," without identifying either the emails or the associates.

33. By letter dated May 6, 2009, Ms. McPherson appealed the DOL's initial denial of her application for unemployment benefits. A hearing was held before an administrative law judge on July 1, 2009, in Brooklyn, New York. No representative of Bank of America appeared at the hearing. After listening to Ms. McPherson's testimony and reviewing the documentary evidence, the ALJ issued a favorable decision that same day, finding that the company's email policy "was widely and routinely ignored in the workplace" and that "the claimant's actions did not constitute misconduct." Upon information and belief, Bank of America did not appeal the ALJ's decision.

34. Clearly, the reason given by Bank of America for Ms. McPherson's termination – sending an inappropriate email of a sexual nature to a co-worker – was pretextual and not the real reason she was fired. Rather, she was fired by Ms. Benson in retaliation for what she told Ms. Benson and Ms. George during the company's investigation into Mr. Tabinsky's EEO complaint: to wit, that viewing and distributing joke emails was widespread in the Personal Custody Division and that everyone in the group, including Ms. Benson, had "bad mouthed" Bank of America. Additional evidence of the company's unlawful retaliation will be uncovered in discovery.

35. Ms. McPherson also was discriminated against based on her race. Upon information and belief, the person who was the focus of Mr. Tabinsky's EEO complaint was Ms. Lopez, the team leader, who made derogatory remarks about Mr. Tabinsky and other employees in the Personal Custody Division. Upon information and belief, in response to Mr. Tabinsky's complaint, the company imposed progressive discipline on Ms. Lopez, demoting her from her supervisory position and giving her verbal and written warnings; she was not terminated. On the other hand, the company terminated Ms. McPherson. In other words, Bank of America treated the hispanic employee much more favorably than the white employee, despite the hispanic employee's conduct being much more blameworthy. Additional evidence of the company's unlawful race discrimination will be uncovered in discovery.

36. As a result of Bank of America's unlawful discrimination and retaliation, Ms. McPherson has suffered mental and emotional pain and suffering, loss of enjoyment of life, embarrassment and humiliation, lost wages and benefits, lost professional opportunities, and other compensable injuries.

## COUNT ONE:  RACE DISCRIMINATION IN VIOLATION OF TITLE VII
### (Bank of America)

37. Plaintiff repeats and re-alleges Paragraphs 1-36 above.

38. At all relevant times, Bank of America was Plaintiff's employer within the meaning of Title VII.

39. At all relevant times, Plaintiff was an employee within the meaning of Title VII and was qualified for her position.

40. Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions, or privileges of employment because of the employee's race.

41. In violation of Title VII, as alleged herein, Bank of America discriminated against Plaintiff because of her race when it discharged her in connection with an EEO investigation under circumstances giving rise to an inference of unlawful race discrimination.

42. Plaintiff is entitled to an award of compensatory and punitive damages, back pay, front pay, reinstatement, other equitable relief, and attorney's fees and costs to compensate her for the injuries she suffered as a result of the defendant's illegal conduct.

## COUNT TWO:  RACE DISCRIMINATION IN VIOLATION OF THE NYCHRL
### (Bank of America and Kim Benson)

43. Plaintiff repeats and re-alleges Paragraphs 1-42 above.

44. At all relevant times, Bank of America was Plaintiff's employer within the meaning of the NYCHRL.

45. At all relevant times, Kim Benson was an employee or agent of Bank of America within the meaning of the NYCHRL.

46. At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL and was qualified for her position.

47. The NYCHRL prohibits an employer or an employee or agent of the employer from discriminating against an employee in the terms, conditions, or privileges of employment because of the employee's race.

48. In violation of the NYCHRL, as alleged herein, the defendants discriminated against Plaintiff because of her race when it discharged her in connection with an EEO investigation under circumstances giving rise to an inference of unlawful race discrimination. Kim Benson is individually liable for discriminating against Plaintiff because she personally participated in the discriminatory conduct and/or aided and abetted the discriminatory conduct.

49. Plaintiff is entitled to an award of compensatory and punitive damages, back pay, front pay, reinstatement, other equitable relief, and attorney's fees and costs to compensate her for the injuries she suffered as a result of the defendants' illegal conduct.

## COUNT THREE: RETALIATION IN VIOLATION OF TITLE VII
### (Bank of America)

50. Plaintiff repeats and re-alleges Paragraphs 1-49 above.

51. At all relevant times, Bank of America was Plaintiff's employer within the meaning of Title VII.

52. At all relevant times, Plaintiff was an employee within the meaning of Title VII and was qualified for her position.

53. Title VII prohibits an employer from retaliating against an employee because the employee opposed any practice made an unlawful employment practice by Title VII

or participated in any manner in an investigation under Title VII. This includes retaliating against an employee who opposed any practice that the employee reasonably and in good faith believed is prohibited by the statute.

54. In violation of Title VII, as alleged herein, Bank of America retaliated against Plaintiff when it discharged her in connection with an EEO investigation under circumstances giving rise to an inference of unlawful retaliation.

55. Plaintiff is entitled to an award of compensatory and punitive damages, back pay, front pay, reinstatement, other equitable relief, and attorney's fees and costs to compensate her for the injuries she suffered as a result of the defendant's illegal conduct.

### COUNT FOUR: RETALIATION IN VIOLATION OF THE NYCHRL
**(Bank of America and Kim Benson)**

56. Plaintiff repeats and re-alleges Paragraphs 1-55 above.

57. At all relevant times, Bank of America was Plaintiff's employer within the meaning of the NYCHRL.

58. At all relevant times, Kim Benson was an employee or agent of Bank of America within the meaning of the NYCHRL.

59. At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL and was qualified for her position.

60. The NYCHRL prohibits an employer or an employee or agent of the employer from discriminating or retaliating against an employee in any manner because the employee opposed any practice forbidden by the statute. This includes retaliating against an employee who opposed any practice that the employee reasonably and in good faith believed is forbidden by the statute.

61. In violation of the NYCHRL, as alleged herein, the defendants retaliated against Plaintiff when they discharged her in connection with an EEO investigation under circumstances giving rise to an inference of unlawful retaliation. Kim Benson is individually liable for retaliating against Plaintiff because she personally participated in the retaliatory conduct and/or aided and abetted the retaliatory conduct.

62. Plaintiff is entitled to an award of compensatory and punitive damages, back pay, front pay, reinstatement, other equitable relief, and attorney's fees and costs to compensate her for the injuries she suffered as a result of the defendants' illegal conduct.

## **PRAYER FOR RELIEF**

      A.      Compensatory damages in an amount exceeding $900,000;

      B.      Punitive damages to the maximum amount allowed under the law;

      C.      Payment of all wages and benefits owed to Ms. McPherson, with interest and penalties as allowed by law;

      D.      Reinstatement of Ms. McPherson to her rightful position as Vice President, Personal Custody Division, of U.S. Trust, Bank of America Private Wealth Management;

      E.      Attorney's fees and costs; and

      F.      Such other relief as justice may require.


Dated: December 3, 2009
       New York, New York

                                      Respectfully submitted,

                                      LAW FIRM OF STEVEN M. WARSHAWSKY
                                      Empire State Building
                                      350 Fifth Avenue, 59th Floor
                                      New York, New York  10118

                                      *Attorney for Plaintiff Virginia T. McPherson*


                                      *Steven M. Warshawsky*
                By:      _____
                                      STEVEN M. WARSHAWSKY
                                      Tel:  (212) 601-1980
                                      Fax:  (212) 601-2610
                                      E-mail:  smw@warshawskylawfirm.com